FILED

2018 MAR 27  PM 4:56

CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT FLORIDA
TAMPA, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.

CASE NO. 8:18cr142T35JSS

FRANK VINCENT MONTE and
KIMBERLEY SUE ANDERSON

18 U.S.C. § 371
42 U.S.C. § 1320a-7b(b)(2)(B)
18 U.S.C. § 1001
18 U.S.C. § 1956(h)
18 U.S.C. § 1957

## INDICTMENT

The Grand Jury charges:

## COUNT ONE
### (Conspiracy)

### A.  Introduction

At times material to this Indictment:

1.     Frank Vincent Monte ("Monte") was a resident of the Middle
District of Florida and the President, founder, co-owner, and co-operator of
Centurion Holding, Inc.

2.     Kimberley Sue Anderson ("Anderson") was a resident of the
Middle District of Florida and the Vice President, co-owner, and co-operator
of Centurion Holding, Inc.

SEALED

3. Centurion Holding, Inc. was a Florida corporation and the registered agent for Centurion Compounding, Inc. (collectively "Centurion"). Centurion was a marketing firm located in Pasco County in the Middle District of Florida co-owned and co-operated by Monte and Anderson. Centurion employed sales representatives as independent contractors to market expensive compounded medications, specifically creams for pain and scars, among others, to beneficiaries of health care benefit programs. Centurion focused its promotional efforts on TRICARE beneficiaries based upon an understanding and belief that TRICARE would pay claims for these expensive compounded creams. Centurion directed the patients it recruited and the physicians in its network to send all of their prescriptions for these compounded creams to Centurion, which transmitted the prescriptions to LifeCare Pharmacy to be filled.

4. Pharmland LLC, d/b/a LifeCare Pharmacy ("LifeCare Pharmacy"), was a retail and compounding pharmacy located in Pinellas County in the Middle District of Florida co-owned and co-operated by Carlos Mazariegos and Benjamin Nundy. LifeCare Pharmacy produced compounded creams for scars, pain, and other ailments, among other things. LifeCare Pharmacy billed TRICARE, Medicare, and other health care benefit

2

programs for these creams, each of which typically ranged in price from approximately $900 to $21,000 for a one-month supply.

5.       LifeCare Pharmacy was engaged in a marketing relationship with Centurion pursuant to which LifeCare Pharmacy paid Centurion an illegal kickback of approximately 50% of each claim paid by TRICARE, Medicare, or other health care benefit program, minus expenses, for each prescription Centurion submitted to LifeCare Pharmacy to be filled.   Centurion paid its sales representatives a percentage of the paid claims it received from LifeCare Pharmacy, which ranged from 15-30% of the total claim amount after expenses.

6.       Anthony Baldizzi was a licensed medical doctor who resided and practiced medicine in the Middle District of Florida.   As part of his practice, Dr. Baldizzi prescribed compounded creams to patients who were directed to fill these prescriptions at LifeCare Pharmacy.   Many of these compounded creams were marketed by Centurion for whom Dr. Baldizzi served as an "in network" physician.

7.       TRICARE was a federal health insurance program that provided coverage for U.S. military members, retirees, and their family members. TRICARE was a federal health care benefit program, as defined by Title 18, United States Code, Section 24(b), and a federal health care program, as

defined in Title 42, United States Code, Section 1320a-7b(f).   Individuals who received benefits from TRICARE were commonly referred to as TRICARE beneficiaries.

8.     Medicare was a federal health insurance program that provided coverage for people age 65 and older, people under 65 with certain disabilities, and people of all ages with end-stage renal disease.   Medicare was a health care benefit program as defined by Title 18, United States Code, Section 24(b), and a federal health care program, as defined in Title 42, United States Code, Section 1320a-7b(f).   Individuals who received benefits from Medicare were commonly referred to as Medicare beneficiaries.

### B.   The Conspiracy

9.     Beginning on an unknown date, but at least as early as in or around May 2014, and continuing through and including the date of this Indictment, in the Middle District of Florida and elsewhere, the defendants,

**FRANK VINCENT MONTE**
**and**
**KIMBERLEY SUE ANDERSON,**

did knowingly and willfully combine, conspire, confederate and agree with others, both known and unknown to the Grand Jury, including Carlos Mazariegos, Benjamin Nundy, and Dr. Anthony Baldizzi, to commit certain offenses against the United States, specifically:

4

    a.    the offering and paying of health care kickbacks, in violation of 42 U.S.C. § 1320a-7b(b)(2)(B);

    b.    the soliciting and receiving of health care kickbacks, in violation of 42 U.S.C. § 1320a-7b(b)(1)(A); and

    c.    healthcare fraud, in violation of 18 U.S.C. § 1347.

## C. **Manner and Means**

10. The manner and means by which the defendants and their coconspirators sought to accomplish the purposes of the conspiracy included, among other things:

    a.    It was a part of the conspiracy that conspirators Carlos Mazariegos and Benjamin Nundy would and did own and operate LifeCare Pharmacy, which filled retail prescriptions and produced compounded medications, particularly expensive creams, prescribed by coconspirator Dr. Baldizzi and other physicians.

    b.    It was further part of the conspiracy that conspirators Monte and Anderson would and did own and operate Centurion, a marketing firm.  Centurion recruited patients to obtain prescriptions for expensive compounded creams that would be paid for by TRICARE, Medicare, and other health benefit programs.

c.     It was further part of the conspiracy that conspirators Mazariegos and Nundy would and did cause LifeCare Pharmacy to enter into an unlawful marketing agreement with Monte and Anderson at Centurion, which the conspirators memorialized in a document entitled "Referral Agreement."   In the Referral Agreement, LifeCare Pharmacy agreed to pay and did in fact pay illegal kickbacks to Centurion equal to approximately 50% of the proceeds of claims paid to LifeCare Pharmacy by TRICARE, Medicare, and other health care benefit programs, after expenses, for prescriptions for compounded medications that Centurion directed to LifeCare Pharmacy to be filled.

d.     It was further part of the conspiracy that the conspirators would and did bill and cause to be billed TRICARE, Medicare, and other health benefit programs for compounded creams Dr. Baldizzi and other physicians prescribed to TRICARE and Medicare beneficiaries, among others, which prescriptions LifeCare Pharmacy filled.

e.     It was further part of the conspiracy that conspirators Mazariegos and Nundy would and did open and control bank accounts in the name of LifeCare Pharmacy into which funds from TRICARE, Medicare, and other health benefit programs were received as a result of claims for payment

LifeCare Pharmacy submitted for compounded cream prescriptions marketed by Centurion and written by Dr. Baldizzi and other physicians.

    f.    It was further part of the conspiracy that conspirators Monte and Anderson would and did open and control bank accounts in the name of Centurion into which illegal kickbacks from LifeCare Pharmacy were deposited.

    g.    It was further part of the conspiracy that the conspirators would and did cause Centurion, as directed by Monte and Anderson, to employ sales representatives to recruit patients to be seen by physicians and provide said patients with preprinted prescriptions featuring compounded medications with high rates of reimbursement for such generalized ailments as pain and scars. The physicians, including Dr. Baldizzi, would and did prescribe these Centurion-marketed compounded creams, which prescriptions were routed through Centurion to LifeCare Pharmacy to be filled.

    h.    It was further part of the conspiracy that the conspirators would and did direct Centurion-recruited patients, many of whom were TRICARE beneficiaries, to Dr. Baldizzi and other physicians to obtain prescriptions for Centurion-marketed compounded creams, which prescriptions LifeCare Pharmacy filled.

i.      It was further part of the conspiracy that Dr. Baldizzi,

working at the direction of Monte, Anderson, and other conspirators at

Centurion, would and did operate temporary, after-hours, offsite clinics at

hotels and retail stores in the Middle District of Florida to see high volumes of

Centurion-recruited patients, many of whom were TRICARE beneficiaries,

and prescribe Centurion-marketed compounding creams, which prescriptions

were filled at LifeCare Pharmacy.

j.      It was further part of the conspiracy that conspirators

Mazariegos and Nundy on behalf of LifeCare Pharmacy, and Monte and

Anderson on behalf of Centurion, would and did agree to pay, and did in fact

pay, illegal kickbacks to Dr. Baldizzi equal to approximately 10% of the after-

cost amount of each claim paid by TRICARE, Medicare, and other health

care benefit programs for prescriptions for compounded medications written

by Dr. Baldizzi and filled by LifeCare Pharmacy for Centurion-recruited

patients.

k.      It was further part of the conspiracy that the conspirators

would and did agree that the amount of Dr. Baldizzi's kickbacks would be

split evenly between LifeCare Pharmacy (5%) and Centurion (5%).

l.      It was further part of the conspiracy that the conspirators

would and did agree that LifeCare Pharmacy and Mazariegos would pay Dr.

Baldizzi his illegal kickbacks by deducting Centurion's portion of the kickbacks it owed to Dr. Baldizzi (5%) from Centurion's percentage of the proceeds owed to it pursuant to the Referral Agreement, and combining those funds with LifeCare Pharmacy's portion of the illegal kickbacks (5%) due to be paid to Dr. Baldizzi.

m.    It was further part of the conspiracy that Dr. Baldizzi would and did make periodic demands to the conspirators and others for the payment of kickbacks via telephone calls, text messages, and/or in-person conversations during which the conspirators, to avoid detection, would and did refer to the payment of kickbacks as the delivery of "FedEx" or "UPS" packages.

n.    It was further part of the conspiracy that the conspirators would and did promise to pay kickbacks, and did in fact, make cash payments and provide other things of value to Dr. Baldizzi, including payment for a BMW automobile, as kickbacks for writing prescriptions for compounded creams for Centurion-recruited patients, many of whom were TRICARE beneficiaries, which prescriptions were filled at LifeCare Pharmacy.

o.    It was further part of the conspiracy that the conspirators would and did use the proceeds from TRICARE and other health care benefit programs to purchase luxury vehicles, real estate, and other things of value.

9

p.    It was further part of the conspiracy that the conspirators and others would and did perform acts and make statements to hide and conceal and cause to be hidden and concealed the purpose of the conspiracy and the acts committed in furtherance thereof.

### D.    <u>Overt Acts</u>

11.    In furtherance of the conspiracy and to effect the objects thereof, the conspirators committed and caused to be committed, within the Middle District of Florida and elsewhere, the following overt acts, among others:

a.    On or about the dates set forth below, each of which constitutes a separate overt act, the conspirators agreed to pay, and did in fact pay Baldizzi remuneration in the approximate amounts listed below to induce Dr. Baldizzi to arrange for the writing of prescriptions for Centurion-marketed compounded creams for Centurion-recruited patients, which prescriptions were filled at LifeCare Pharmacy and claims for which were paid in whole or in part by a federal health care benefit program:

| Overt Act | Date | Approximate Kickback Amount |
|-----------|------|------------------------------|
| a.1 | August 14, 2014 | $27,415.78 |
| a.2 | August 26, 2014 | $31,730.46 |
| a.3 | September 12, 2014 | $61,667.34 |
| a.4 | September 28, 2014 | $33,115.32 |
| a.5 | December 3, 2014 | $71,900.00 |

All in violation of 18 U.S.C. § 371.

## COUNTS TWO THROUGH SIX
### (Offering and Paying of Health Care Kickbacks)

### A.   Introduction

1.     The Grand Jury hereby realleges Paragraphs 1 through 8 and 10 of Count One of this Indictment and incorporates such paragraphs by this reference as though fully set forth herein.

### B.   Offense

2.     On or about the dates listed below, in the Middle District of Florida and elsewhere, the defendants,

**FRANK VINCENT MONTE**
**and**
**KIMBERLEY SUE ANDERSON,**

11

did knowingly and willfully offer and pay any remuneration (including
kickbacks and bribes), directly and indirectly, overtly and covertly, in cash and
in kind, to any person to induce such person to purchase and order, and
arrange for and recommend purchasing and ordering any good, service, and
item for which payment may be made in whole and in part under a Federal
health care program, specifically remuneration in the approximate amounts
listed below to induce Dr. Baldizzi to arrange for the writing of prescriptions
for Centurion-marketed compounded creams for Centurion-recruited patients,
which prescriptions were filled at LifeCare Pharmacy and claims for which
were paid in whole or in part by TRICARE and Medicare:

| COUNT | Date | Approximate Kickback Amount |
|-------|------|------------------------------|
| TWO | August 14, 2014 | $27,415.78 |
| THREE | August 26, 2014 | $31,730.46 |
| FOUR | September 12, 2014 | $61,667.34 |
| FIVE | September 28, 2014 | $33,115.32 |
| SIX | December 3, 2014 | $71,900.00 |

In violation of 42 U.S.C. § 1320a-7b(b)(2)(B) and 18 U.S.C. § 2.

## COUNT SEVEN
### (False Statements)

### A.  Introduction

1.     The Grand Jury hereby realleges Paragraphs 1 through 8 and 10
of Count One of this Indictment and incorporates such paragraphs by this
reference as though fully set forth herein.

### B.  Offense

2.     On or about May 10, 2016, in the Middle District of Florida and
elsewhere, the defendant,

### FRANK VINCENT MONTE,

did knowingly and willfully make a materially false, fictitious, and fraudulent
statement and representation in a matter within the jurisdiction of the
executive branch of the Government of the United States by making false
statements at the United States Attorney's Office for the Middle District of
Florida, in Tampa, Florida, to agents of the Federal Bureau of Investigation,
Defense Criminal Investigative Service, Health and Human Services-Office of
Inspector General and others, denying that he participated in or knew
anything about the payment or promise of payment of kickbacks to Dr.
Anthony Baldizzi prior to December 2014.   The statements and
representations were false because, as FRANK VINCENT MONTE then and

there knew, prior to December 2014, he paid and promised to pay kickbacks to Dr. Anthony Baldizzi in the form of cash and other things of value in exchange for the writing of prescriptions for compounded medications marketed by Centurion and filled at Lifecare Pharmacy.

In violation of 18 U.S.C. § 1001(a)(2).

## COUNT EIGHT
### (False Statements)

### A.   Introduction

1.    The Grand Jury hereby realleges Paragraphs 1 through 8 and 10 of Count One of this Indictment and incorporates such paragraphs by this reference as though fully set forth herein.

### B.   Offense

On or about May 10, 2016, in the Middle District of Florida and elsewhere, the defendant,

### FRANK VINCENT MONTE,

did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States by making false statements at the United States Attorney's Office for the Middle District of Florida, in Tampa, Florida, to agents of the Federal Bureau of Investigation,

Defense Criminal Investigative Service, Health and Human Services-Office of

Inspector General and others, stating that the off-site "pop-up" medical clinics

administered by Dr. Anthony Baldizzi at the DoubleTree Hotel in Tampa,

Florida were not initiated, planned, or paid for by Centurion.   The statements

and representations were false because, as FRANK VINCENT MONTE then

and there knew, he and others, acting on behalf of Centurion, arranged, paid

for, and instructed Dr. Anthony Baldizzi and others to conduct off-site, pop-

up clinics at the DoubleTree Hotel in Tampa, Florida to promote the writing

of prescriptions for compounded medications marketed by Centurion and

filled at Lifecare Pharmacy.

In violation of 18 U.S.C. § 1001(a)(2).

## COUNT NINE
### (Conspiracy to Commit Money Laundering)

### A.  Introduction

1.    The Grand Jury hereby realleges Paragraphs 1 through 8 of

Count One of this Indictment and incorporates such paragraphs by this

reference as though fully set forth herein.

### B.  The Conspiracy

2.    Beginning on an unknown date, but at least as early as in or

around May 2014, and continuing through and including the date of this

Indictment, in the Middle District of Florida and elsewhere, the defendants,

**FRANK VINCENT MONTE**
**and**
**KIMBERLEY SUE ANDERSON,**

did knowingly combine, conspire, and agree with each other and other

persons known and unknown to the Grand Jury to commit offenses against

the United States, in violation of Title 18, United States Code, Section 1957,

to wit: to knowingly engage and attempt to engage in monetary transactions in

and affecting interstate and foreign commerce, in criminally derived property

of a value greater than $10,000.00, which property was, in fact, derived from a

specified unlawful activity, namely, the offering and paying of health care

kickbacks, in violation of 42 U.S.C. § 1320a-7b(b)(2)(B), and the soliciting and

receiving of health care kickbacks, in violation of 42 U.S.C. § 1320a-

7b(b)(1)(A).

## C.    Manner and Means

3.    The Grand Jury hereby realleges Paragraph 10 of Count One of

this Indictment and incorporates such paragraph by this reference as though

fully set forth herein.

All in violation of 18 U.S.C. § 1956(h).

16

## COUNTS TEN THROUGH TWELVE
### (Illegal Monetary Transactions)

### A.  Introduction

1.      The Grand Jury hereby realleges Paragraphs 1 through 8 and 10 of Count One of this Indictment and incorporates such paragraphs by this reference as though fully set forth herein.

### B.  Offense

2.      On or about the dates listed below, in the Middle District of Florida and elsewhere, the defendant,

### FRANK VINCENT MONTE,

did knowingly engage and attempt to engage in the monetary transactions described below, and aided and abetted others in engaging in the monetary transactions described below, in and affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000.00, which property was, in fact, derived from a specified unlawful activity, namely, the offering and paying of health care kickbacks, in violation of 42 U.S.C. §§ 1320a-7b(b)(2)(B) and 1320a-7b(b)(1)(A), specifically:

| COUNT | Date of Transaction | Transaction Amount | Item Purchased |
|---|---|---|---|
| TEN | July 31, 2014 | $60,000.00 | 2011 Mercedes-Benz SLS AMG, VIN WDDRJ7HAXBA003145 |
| ELEVEN | September 16, 2014 | $61,276.91 | 2012 Fisker Karma, VIN YH4K16AA1CA000190 |
| TWELVE | October 7, 2014 | $380,461.48 | 2012 Lamborghini Aventador LP 700-4, VIN ZHWUC1ZD6CLA00926 |

In violation of 18 U.S.C. §§ 1957 and 2.

## COUNTS THIRTEEN THROUGH FIFTEEN
### (Illegal Monetary Transactions)

### A.  Introduction

1.     The Grand Jury hereby realleges Paragraphs 1 through 8 and 10 of Count One of this Indictment and incorporates such paragraphs by this reference as though fully set forth herein.

### B.  Offense

2.     On or about the dates listed below, in the Middle District of Florida and elsewhere, the defendant,

### KIMBERLEY SUE ANDERSON,

did knowingly engage and attempt to engage in the monetary transactions described below, and aided and abetted others in engaging in the monetary

transactions described below, in and affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000.00, which property was, in fact, derived from a specified unlawful activity, namely, the offering and paying of health care kickbacks, in violation of 42 U.S.C. § 1320a-7b(b)(2)(B) and 1320a-7b(b)(1)(A), specifically:

| Overt Act | Date of Transaction | Transaction Amount | Item Purchased |
|-----------|---------------------|--------------------|----------------|
| THIRTEEN | August 15, 2014 | $51,000.00 | 2010 Ferrari California Coupe, VIN ZFF65LJA0A0172052 |
| FOURTEEN | October 7, 2014 | $71,135.10 | 2012 Porsche Panamera, VIN WP0AA2A78CL016698 |
| FIFTEEN | October 7, 2014 | $94,709.80 | 2009 Bentley Continental GT, VIN SCBCR73W69C059631 |

In violation of 18 U.S.C. §§ 1957 and 2.

## FORFEITURE

1.     The allegations contained in Counts One through Fifteen are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. §§ 982(a)(1) and 982(a)(7).

2.     Upon a conviction of a federal health care offense, including a violation of 42 U.S.C. § 1320a-7b(b)(2)(B) and/or 18 U.S.C. § 1347, or

conspiracy to commit such an offense, as alleged in Counts One through Six, the defendants,

**FRANK VINCENT MONTE**
**and**
**KIMBERLEY SUE ANDERSON,**

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

3.      Upon a conviction of a violation of 18 U.S.C. § 1956(h), as alleged in Count Nine, the defendants,

**FRANK VINCENT MONTE**
**and**
**KIMBERLEY SUE ANDERSON,**

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense and any property traceable to such property.

4.      Upon conviction of a violation of 18 U.S.C. § 1957, or a conspiracy to commit such offense, as alleged in Counts Nine through Twelve, the defendant,

**FRANK VINCENT MONTE,**

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property.

5.      Upon conviction of a violation of 18 U.S.C. § 1957, or a conspiracy to commit such offense, as alleged in Counts Nine and Thirteen through Fifteen, the defendant,

**KIMBERLEY SUE ANDERSON,**

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property.

6.      The property to be forfeited includes, but is not limited to, the following:

a.      An order of forfeiture in the amount of the proceeds obtained from the health care offenses, as well as the amount involved in the money laundering offenses;

b.      2010 Ferrari California coupe, VIN: ZFF65LJA0A0172052, titled to Kimberley Sue Anderson;

c.      2012 Lamborghini Aventador LP 700-4, VIN: ZHWUC1ZD6CLA00926, titled to Frank Vincent Monte;

d.      2012 Itasca Motor Home, VIN: 4UZFCUCY4BCBH2022, titled to Frank Vincent Monte;

e.     2013 McLaren 12C Spider Convertible, VIN:
       SBM11BAA3DW002596, titled to Kimberley Sue
       Anderson;

f.     2011 Mercedes-Benz SLS AMG, VIN:
       WDDRJ7HAXBA003145, titled to Frank Vincent Monte;

g.     2012 Porsche Panamera, VIN: WP0AA2A78CL016698,
       titled to Kimberley Sue Anderson;

h.     2014 Maserati, VIN: ZAM45VLAXE0122209, titled to
       Centurion Holding, Inc., and Frank Vincent Monte;

i.     2005 Ford GT, VIN: 1FAFP90SX5Y400075, titled to
       Frank Monte;

j.     2009 Bentley Continental GT, VIN:
       SCBCR73W69C059631;

k.     2012 Fisker Karma, VIN: YH4K16AA1CA000190;

l.     The real property located at 27616 Sora Boulevard,
       Wesley Chapel, Florida 33544;

m.     The real property located at 8147 Swiss Chard Circle,
       Land O Lakes, Florida 34637;

n.     The real property located at 617 Bahia Beach Boulevard,
       Ruskin, Florida 33570;

o.     The real property located at 422 Bahia Beach Boulevard,
       Ruskin, Florida 33570;

p.     The real property located at 5025 N. Vaughn Road, Plant
       City, Florida;

q.     The real property located at 5811 Beverly Drive, Hudson,
       Florida; and

r.      Approximately $8,730.50 in funds seized from JPMorgan Chase Account Number 653683990, held in the name of Centurion Holding, Inc.

7.      If any of the property described above, as a result of any act or omission of the defendants:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third party;

c.      has been placed beyond the jurisdiction of the Court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be divided without difficulty;

the United States shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

A TRUE BILL,

_____
Foreperson

MARIA CHAPA LOPEZ
United States Attorney

By: _____
Amanda L. Riedel
Assistant United States Attorney

By: _____
Simon A. Gaugush
Assistant United States Attorney
Chief, Economic Crimes Section

24

FORM OBD-34
March 18

No.

# UNITED STATES DISTRICT COURT

Middle District of Florida

Tampa Division

THE UNITED STATES OF AMERICA

vs.

FRANK VINCENT MONTE and
KIMBERLEY SUE ANDERSON

## INDICTMENT

Violations:   18 U.S.C. §§ 371, 1001, 1956(h), and 1957,
and 42 U.S.C. § 1320a-7b(b)(2)(B)

A true bill,

_____
Foreperson

Filed in open court this 27th day

of March 2018.

_____
Clerk

Bail $_____

FILED

2018 MAR 27   PM 4: 56

MIDDLE DISTRICT COURT
TAMPA, FLORIDA

GPO 863-525